IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JOHNNY ANTHONY GETTIS, III,
      Petitioner,

vs.                            Case No. 3:08cv91/MCR/EMT

WALTER McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 20). Petitioner filed a reply (Doc. 26).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 20, Exhibits).[1] Petitioner was charged in the Circuit Court for

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 20).

Escambia County, Florida, with armed robbery (Doc. 20, Ex. A at 1).[2]  After the jury was selected, but prior to trial commencing, Petitioner complained about defense counsel's performance (Doc. 20 at 2, Ex. A, docket entries 9/2/2003, 9/4/2003).  The trial court conducted inquiries and found there was no conflict regarding counsel's representation of Petitioner and no basis to discharge counsel (Doc. 20 at 2, Ex. A, docket entry 9/4/2003).  The jury was sworn, and trial commenced (*id.*). Petitioner reiterated that he did not want to be represented by the attorney at trial (*id.*).  The trial court conducted a <u>Faretta</u> inquiry and discharged the public defender (*id.*).  Petitioner represented himself for the remainder of the trial (*id.*).  He was found guilty as charged (Ex. H at 7).  On October 23, 2003, he was sentenced to life imprisonment (Ex. H at 12–17).  Petitioner appealed his conviction, and the Florida First District Court of Appeal (First DCA) reversed the judgment (Ex. H at 20–23).  <u>Gettis v. State</u>, 892 So. 2d 1217 (Fla. 1st DCA 2005).

Upon remand to the trial court, the court found that Petitioner was not competent to represent himself; therefore, the public defender was reappointed (Ex. H at 14–70). Petitioner again complained about counsel, but the court declined to discharge counsel (*id.* at 89, 109–31). Petitioner's second trial was held September 8, 2005 (Ex. I).  He was convicted as charged of robbery with a firearm (*id.* at 236).  On September 29, 2005, Petitioner was sentenced as a prison releasee reoffender, pursuant to Florida Statutes § 775.082(2)(b), to life imprisonment, with a minimum term of life (*id.* at 238–53, 283–90).

Petitioner appealed the judgment to the First DCA (Ex. J).  On August 16, 2006, the First DCA affirmed the judgment of conviction per curiam without written opinion (Ex. J).  <u>Gettis v. State</u>, 935 So. 2d 503 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek further review by the Florida Supreme Court or the United States Supreme Court.

On February 9, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, in the trial court (Ex. M).  On June 13, 2007, the trial court dismissed the motion (Ex. N).

---

[2] Petitioner was also charged with possession of a firearm by a convicted felon and petit theft, but the prosecutor declined to take action on those counts (Ex. A, docket entries 4/8/2003, 10/24/2003).

On August 10, 2007, Petitioner filed a petition alleging ineffective assistance of appellate counsel in the First DCA (Exs. O, P).  The court denied the petition in an ordered rendered on September 27, 2007 (Ex. Q).  Gettis v. State, 965 So. 2d 844 (Fla. 1st DCA 2007).

Petitioner filed the instant habeas action on March 2, 2008 (Doc. 1 at 1).  Respondent concedes that the petition is timely (Doc. 20 at 5).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  Id. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's

claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

[6] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision

---

to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[8]

A.    Ground One:  "Withholding of evidence by both State/defense attorneys."

In Ground One, Petitioner contends the trial court failed to rule on his motion to dismiss court-appointed counsel, filed June 22, 2005, in which Petitioner asserted that counsel (Assistant

---

[8] The court has numbered Petitioner's six claims as he numbered them in the memorandum of law attached to and incorporated into his petition, not as he numbered four of them in pages 5–6 of his petition.

Public Defender Scott Tatum) failed to present evidence favorable to the defense, specifically, an audiotape, created by members of Petitioner's family, of Officer Mike Amerson's telling Petitioner's family that he (Amerson) had the wrong person (Petitioner) as the suspect in the armed robbery (Doc. 1 at 5, 9).[9] Petitioner additionally contends the State and defense counsel "with[held]" the audiotape, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (*id.* at 10). Petitioner asserts the trial court acknowledged that Petitioner filed the motion to dismiss counsel, but the court never actually examined the audiotape or ruled on the motion, which violated his due process rights under the Fourteenth Amendment (*id.* at 9–10). Petitioner asserts that if the trial court had ruled on his motion to dismiss court-appointed counsel for counsel's failure to present the audiotape at trial, the result of his trial would have been different (*id.*).

Respondent contends Petitioner failed to present a federal claim to the state courts (Doc. 20 at 8–12). Respondent acknowledges that Petitioner raised on direct appeal the issue of whether the trial court erred in not ruling on his pro se motion to dismiss counsel, but the claim was presented as a state law issue, not a federal issue (*id.*). Although Petitioner's appellate counsel mentioned due process and cited "Amendments V, VI & XIV of the United States Constitution" in the conclusion of his legal argument, he argued and cited only Florida cases interpreting how, under procedures established in <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973), the trial court should handle motions to dismiss counsel (*id.* at 8). Respondent contends counsel's merely mentioning due process and constitutional Amendments, while basing his substantive arguments on state law, is insufficient to fairly present a federal claim under <u>McNair</u>, 416 F.3d at 1304 (*id.* at 9–10, 12).

In Petitioner's reply, he appears to agree that his appellate counsel failed to fairly present his federal constitutional claims in the brief on direct appeal; however, Petitioner contends he is entitled to review of his claims because he has established cause for the failure, namely, ineffective assistance of appellate counsel (*see* Doc. 1 at 5; Doc. 26).

The court will first address whether Petitioner fairly presented a federal claim in his direct appeal. In his appellate brief, Petitioner's appellate counsel argued that the trial court violated Petitioner's Sixth Amendment right to counsel by conducting a hearing on Petitioner's pro se motion

---

[9] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

alleging ineffective assistance of counsel but failing to rule on the motion, thereby allowing appointed counsel to remain as counsel of record throughout the trial without a determination of whether counsel was providing effective representation (Ex. K).  Appellate counsel further argued that the trial court's failure to rule on the motion to dismiss counsel violated due process because it rendered the trial fundamentally unfair (*id.* at 6–7).

The undersigned concludes that Petitioner fairly presented a federal claim on direct appeal by expressly arguing that the trial court's failure to rule on the motion to dismiss counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel and his right to a fundamentally fair trial (Ex. K at 6).  This is the same claim of trial court error asserted in Ground One of the instant petition.[10]  Therefore, the undersigned concludes that Petitioner's claim of trial court was exhausted by appellate counsel's presenting it on direct appeal.[11]

The First DCA rejected Petitioner's claim and affirmed the judgment of conviction without written opinion.  Although the state court denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be contrary to or an unreasonable application of clearly established Supreme Court law.  *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

1.      Clearly Established Federal Law

The Sixth and Fourteenth Amendments of the Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment.  *See, e.g.*, Faretta v. California, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158; Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; Betts v. Brady, 316 U.S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595; Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.

---

[10] In Ground One, Petitioner contends the trial court's failure to rule on his motion to dismiss counsel, based upon counsel's failure to use the audiotape as evidence, deprived him of a fundamentally fair trial (*see* Doc. 1 at 9–10).

[11] The court liberally construes Petitioner's claim as also asserting a claim of ineffective assistance of counsel based upon Attorney Tatum's failure to present the audiotape at trial.  The court will address that claim *infra*.

Ed. 2d 799; <u>Argersinger v. Hamlin</u>, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). The Supreme Court has additionally recognized that the right to counsel is the right to the <u>effective assistance</u> of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (citation omitted) (emphasis added). Moreover, the Supreme Court has held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. <u>Faretta</u>, 422 U.S. at 807.

2.    Federal Review of State Court Decision

The state court record, as supplemented by Respondent at the court's request (*see* Docs. 28, 31) conclusively refutes Petitioner's claim that the trial court failed to rule on his motion to dismiss counsel. The record shows that Petitioner filed his pro se motion to dismiss counsel on June 22, 2005 (Ex. H at 89). A hearing on Petitioner's motion was held on August 22, 2005, at the conclusion of which the trial court reserved ruling on the motion (*id.* at 109–22). The record further reflects that at a pre-trial hearing on August 31, 2005, the trial court announced its ruling that Petitioner's motion to dismiss counsel was denied (Doc. 31, Ex. R). Indeed, during Petitioner's trial, Petitioner acknowledged the court's denial of his motion to dismiss counsel when he responded to one of the court's questions regarding his decision whether to testify on his own behalf at trial (Ex. I at 147). In light of the record evidence that the trial court in fact ruled on Petitioner's motion to dismiss counsel, the state appellate court's denial of Petitioner's claim of trial court error was not contrary to or an unreasonable application of clearly established Supreme Court law.

Additionally, to the extent Petitioner asserts a freestanding claim that the State and Attorney Tatum violated the constitutional principles announced in <u>Brady</u>, he has failed to state a constitutional claim.[12] In <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The State has an obligation to disclose all exculpatory evidence within its constructive knowledge, including "evidence known to others acting on the government's behalf in the case, including the police."

---

[12] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).  Three elements establish a Brady violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice.  Banks v. Dretke, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004).

In the instant case, Petitioner cannot satisfy the second element of Brady, that is, that the evidence was suppressed by the State.  The state court record establishes that Petitioner was aware of the existence of the audiotape of Officer Amerson, and defense counsel had possession of the audiotape, prior to trial; indeed, the audiotape was the subject of a pre-trial hearing on August 22, 2005, during which Petitioner complained that his family had given defense counsel the audiotape, but counsel was refusing to facilitate Petitioner's listening to it at the jail (Ex. H at 113–14).  Since Petitioner was not only aware of the existence of the audiotape, but defense counsel had actual possession of it prior to trial, Petitioner cannot establish a Brady violation.

B.      Ground One:  "Withholding of evidence by both State/defense attorneys."[13]

Ground Two:  "Denial of requested witnesses."[14]

Ground Three:  "Allowing State witness (Officer Mike Amerson) to give opinionated testimony."[15]

---

[13] As previously noted, the court liberally construes Ground One as asserting not only a claim of trial court error (that is, the trial court's failure to rule on Petitioner's motion to dismiss counsel, discussed *supra* in Section IV. A.), but also ineffective assistance of counsel based upon counsel's failing to permit Petitioner to listen to the aforementioned audiotape of Officer Amerson's conversation with members of Petitioner's family (Doc. 1 at 9–10).

[14] In Ground Two, Petitioner contends the trial court and defense counsel, Attorney Tatum, violated his Sixth Amendment rights to effective assistance of counsel and compulsory process for obtaining witnesses in his favor (Doc. 1 at 11).  Petitioner asserts that on September 8, 2005, during his trial, he made a motion to dismiss counsel on grounds of ineffective assistance, namely, counsel's failure to call alibi witnesses, a technician who processed the crime scene for fingerprints, and a police officer who responded to an anonymous call, all of whom were available to testify (*id.*).  The trial court denied the motion to dismiss counsel on the ground that Petitioner failed to establish ineffective assistance of counsel (*id.* at 11–12).  Petitioner contends the outcome of his trial would have been different if the trial court had granted the motion to dismiss counsel, which would have resulted in the presentation of testimony from these witnesses (*id.* at 12).

[15] In Ground Three, Petitioner contends the trial court erred in permitting Officer Mike Amerson to testify at trial regarding his opinion as to the reason there were no fingerprints matching Petitioner's found at the crime scene (Doc. 1 at 13–14).  Petitioner additionally contends Attorney Tatum rendered ineffective assistance by failing to object to Amerson's testimony (*id.*).  Petitioner contends the result of his trial would have been different had the jury not heard

  <u>Ground Four</u>: "Trial counsel's (Scott Tatum) racial/degrading remarks towards Petitioner (Johnny Anthony Gettis III)."[16]

  <u>Ground Five</u>: "Allowing State witness (Officer Mike Amerson) to elaborate in detail the contents within the anonymous call."[17]

  <u>Ground Six</u>: "Re-appointment of previous [sic] dismissed trial counsel (P.D. Scott Tatum)."[18]

  Respondent contends Petitioner failed to exhaust his state court remedies with respect to any of these claims (Doc. 20 at 7–8, 12–13, 14–15). Respondent contends that the only issue raised by Petitioner on direct appeal was the trial court's alleged failure to rule on Petitioner's pro se written motion to dismiss counsel, filed by Petitioner on June 22, 2005 (Doc. 20 at 8; *see also* Ex. J at 3, 6). Respondent further contends that although Petitioner raised a variety of claims in his post-conviction motion, he failed to appeal the trial court's dismissal of the motion to the First DCA (*id.* at 12–13). Respondent argues Petitioner has no other method for presenting his claims in state court because

---

Amerson's testimony (*id.* at 14).

[16] In Ground Four, Petitioner contends the trial court erred in failing to discharge Attorney Tatum, based upon ineffective assistance, after Petitioner complained to the trial court, during the trial on September 8, 2005, that he and Tatum did not like each other, they could not get along, and Tatum had made degrading comments to him and his family (Doc. 1 at 5, 15–16). Petitioner states the trial court heard Attorney Tatum's response to Petitioner's complaint, in which Tatum admitted that he and Petitioner did not like each other, and there were continuing problems between the two of them (*id.* at 15–16). Petitioner states the trial court ruled that, based upon Petitioner and Tatum's testimony, there was no reason to take action on Petitioner's complaint regarding Tatum (*id.* at 16).

[17] In Ground Five, Petitioner contends Attorney Tatum performed ineffectively by failing to object to Officer Amerson's trial testimony regarding the content of an anonymous telephone call received by the police department, in which the caller identified Petitioner as possibly the robber and stated that the weapon used in the robbery was hidden under a car at Petitioner's mother's house (Doc. 1 at 17–18). Petitioner states the outcome of his trial would have been different if counsel had objected to the testimony (*id.* at 18).

[18] In Ground Six, Petitioner asserts that the trial court appointed the Public Defender's Office on May 4, 2005, knowing that the individual attorney who would likely be assigned to represent Petitioner was Attorney Tatum, who initially represented Petitioner in the first trial and was dismissed due to a conflict of interest with Petitioner and ineffective assistance of counsel (Doc. 1 at 6, 19–20). Petitioner states he asked the trial court to reconsider the re-appointment of the Public Defender's Office due to the conflict between him and Attorney Tatum, but the court denied his request (*id.* at 19–20). Petitioner contends the trial court violated his Sixth Amendment rights by re-appointing counsel knowing that a great conflict existed between Petitioner and Attorney Tatum (*id.* at 20).

any further post-convictions motions would be barred as successive or untimely or both (*id.* at 15). Therefore, the claims are procedurally barred from federal review (*id.*).

Review of the record shows that Petitioner presented all of these claims in his Rule 3.850 motion (Ex. M at 1–6). The trial court dismissed as procedurally barred those post-conviction claims that were or could have been raised on direct appeal, and dismissed as insufficiently pled those post-conviction claims alleging ineffective assistance of counsel (Ex. N). Petitioner did not appeal the trial court's decision to the First DCA. Furthermore, Petitioner would be precluded from now attempting to exhaust these claims in the state courts as the state procedural rules do not provide for a second appeal of a Rule 3.850 motion, and a second Rule 3.850 motion would be subject to dismissal as a successive motion, pursuant to Rule 3.850(f). *See* Delap v. Dugger, 890 F.3d 285, 301 (11th Cir. 1989) (recognizing that Florida courts consistently apply the rule that successive motions for post-conviction relief are denied unless the movant alleges that the asserted grounds were not known and could not have been known to the movant at the time the initial motion was filed) (citing Christopher v. State, 489 So. 2d 22, 24 (Fla. 1986)). As previously discussed, an issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. Bailey, 172 F.3d at 1302–03.

Moreover, Petitioner has failed to show cause for his failure to appeal the trial court's dismissal of his Rule 3.850 motion. Although Petitioner asserts ineffective assistance of appellate counsel as cause for his failure to exhaust Grounds One, Two, Four, and Six (*see* Doc. 1 at 5, 6),[19] he was not represented by counsel in the Rule 3.850 proceeding, which is where the procedural default occurred. Therefore, he is not entitled to federal review of his claims.

C.    Ineffective Assistance of Appellate Counsel

The only remaining issue is whether Petitioner has raised a freestanding claim of ineffective assistance of appellate counsel, apart from his assertion of ineffective assistance of appellate counsel as cause for his failure to exhaust many of his claims. The § 2254 petition form directs Petitioner to set forth all grounds on which he claims that he is being held in violation of federal law (*see* Doc.

---

[19] Petitioner does not allege cause for his failure to exhaust Grounds Three and Five (*see* Doc. 1 at 13–14, 17–18).

1 at 5).  As to each ground identified by Petitioner, the form asks whether Petitioner raised each claim in state court and, if not, explain why the claim was not raised (*id.* at 5–6).  Petitioner did not set forth ineffective assistance of counsel as a ground on which he was being held in violation of federal law (*see id.* at 5–6, 9–20); he did, however, assert ineffective assistance of appellate counsel as an explanation for why he did not raise four of his claims in state court (*see id.* at 5–6). Respondent contends Petitioner did not raise an independent claim of ineffective assistance of appellate counsel in his federal petition; rather, he asserted appellate counsel's ineffective assistance only as cause for his failure to raise some of his claims on direct appeal of his conviction (*see* Doc. 20 at 13–14, 16–17).  Respondent also contends Petitioner failed to exhaust any claim of ineffective assistance of appellate counsel, because Petitioner failed to provide a factual basis for the claim of ineffective assistance of appellate counsel raised in his state habeas petition (*id.*).  In reply, Petitioner states he presented a claim of ineffective assistance of appellate court in his federal petition (Doc. 26 at 10–11).

Review of Petitioner's federal petition confirms Respondent's assertion that Petitioner has not properly raised any claim of ineffective assistance of appellate counsel as an independent ground for relief in this federal habeas proceeding.  In his federal petition, Petitioner raised six claims of trial court error and ineffective assistance of trial counsel (*see* Doc. 1 at 5–6, 8–20; *see also* Doc. 26 at 9).  Although he asserted he received ineffective assistance of appellate counsel, he did so in an attempt to show cause for his failure to exhaust four of his claims (*see* Doc. 1 at 5–6).  Therefore, Petitioner did not properly raise any freestanding claim of ineffective assistance of counsel in his habeas petition.

Furthermore, Petitioner could not amend his petition "as a matter of course" by including an independent claim of ineffective assistance of counsel in his reply brief, because Respondent had already served its answer.  *See* Fed. R . Civ. P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party); Rule 11 of the Rules Governing Section 2254 Proceedings (district court may apply the Federal Rules of Civil Procedure consistent with the Rules Governing Section 2254 Proceedings).  Moreover, Petitioner did not seek leave of court to amend his petition, and the undersigned does not construe Petitioner's reply brief as such a request

because Petitioner expressly stated his intent that the document be deemed a reply to Respondent's answer, and nowhere in the document does Petitioner mention a desire or intent to amend his petition or add a new claim (*see* Doc. 26). Therefore, a freestanding claim of ineffective assistance of counsel is not properly before this court. *See* <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) (traverse is not proper pleading to raise additional grounds for relief; in order for state to be properly advised of additional claims, they should be raised in amended petition or statement of additional claim); *see also,* <u>Klauer v. McNeil</u>, No. 3:07cv541/LAC/EMT, 2009 WL 2399928, at *30 (N.D. Fla. July 31, 2009); <u>Cleckler v. McNeil</u>, No. 3:07cv283/MCR/EMT, 2009 WL 700828, at *11 n.4 (N.D. Fla. Mar. 16, 2009).

However, some courts have recognized an exception to this rule of refusing to consider claims that are not properly presented if "the issue has been briefed fully on the merits [so that] the government will not be prejudiced if [the court] consider[s] it." <u>United States v. Allen</u>, 157 F.3d 661, 667 (9th Cir. 1998) (citation omitted). Here, Respondent addressed Petitioner's contention that he received ineffective assistance of appellate counsel based upon appellate counsel's failure to raise on direct appeal a claim that the trial court erred in reappointing the public defender for Petitioner's second trial because the public defender had been discharged in the first trial due to conflict of interest (Doc. 20 at 13–14). Respondent contended that Petitioner failed to exhaust this claim because although Petitioner raised this claim of ineffective assistance of appellate counsel in his state habeas petition, he did not provide a factual foundation for the claim (*id.*). Therefore, he failed to fairly present it to the state court (*id.*).

Since Respondent addressed, as a freestanding claim of ineffective assistance of appellate counsel, one of the grounds asserted in Petitioner's state habeas petition alleging ineffective assistance of appellate counsel, it is unlikely that Respondent will be prejudiced by this court's consideration of that ground. Therefore, an analysis of the claim follows.

    1.    Clearly Established Supreme Court Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Petitioner must show that his counsel was objectively unreasonable in failing to raise a particular claim. *See* <u>Smith v. Robbins</u>, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000)

(citation omitted). To be effective, appellate counsel need not argue every non-frivolous ground for appeal, but may "select among them in order to maximize the likelihood of success on appeal." *Id.*, 528 U.S. at 288. Furthermore, the practice of "winnowing out" weaker arguments on appeal, so to focus on those that are more likely to prevail, is the "hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667, 91 L. Ed. 2d 434, 445 (1986); *see also* Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). If Petitioner succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his appellate counsel's unreasonable failure to raise the particular claim on appeal, he would have prevailed on his appeal. *See* Smith v. Robins, 528 U.S. at 265.

2.      Federal Review of State Court Decision

In Petitioner's state habeas petition, he claimed that his appellate counsel performed ineffectively by failing to include the following two issues in the direct appeal of his conviction: (1) trial court error based upon the trial court's reappointing the public defender's office to represent Petitioner in the second trial knowing that the particular public defender who was discharged from Petitioner's first trial (and with whom Petitioner had a personal conflict) would be assigned to represent Petitioner in the second trial, and (2) trial court error based upon the court's refusal to permit Petitioner to call witnesses in his defense when defense counsel refused to do so (Ex. P). The First DCA denied the petition on the merits (Ex. Q).

Petitioner has identified no United States Supreme Court case holding appellate counsel rendered constitutionally deficient performance in a situation such as the one before this federal court, that is, where appellate counsel failed to challenge a trial court's reappointing in a second trial the same attorney who was discharged from representation in a first trial, or where appellate counsel failed to challenge a trial court's refusal to permit a defendant to call witnesses in his defense when defense counsel refused to do so.

Furthermore, Petitioner has not identified any basis from which the court can conclude the First DCA unreasonably applied United States Supreme Court law when it denied his claims of

ineffective assistance of appellate counsel. As to the first issue raised by Petitioner in his state habeas petition alleging ineffective assistance of appellate counsel (the trial court's alleged error in reappointing the public defender's office in the second trial knowing that the particular public defender who was discharged from Petitioner's first trial (and with whom Petitioner had a personal conflict) would be assigned to represent Petitioner in the second trial), Petitioner failed to show in his petition to the First DCA that appellate counsel's failure to raise this issue was objectively unreasonable. In the absence of record evidence that the public defender's office had an actual conflict of interest (which does not include merely a personal conflict or disagreement) or an issue of joint representation, or that Petitioner indicated his desire to represent himself, or that he had hired counsel of his own choosing, Petitioner failed to show a reasonable probability that the issue would have brought him success on appeal if appellate counsel had raised it. *See* Aldridge v. State, 425 So. 2d 1132, 1132 (Fla. 1982) (no error in trial court's refusal to appoint new counsel from outside public defender's office where type of individual conflict or personal disagreement asserted by defendant (as opposed to actual conflict arising out of multiple representation or situation where assistant public defender was called to testify against a defendant represented by another assistant public defender working in same office) did not mandate that new counsel be appointed by the trial court). Therefore, he failed to demonstrate that appellate counsel's failure to present this issue on appeal was objectively unreasonable, or that there was a reasonable probability of success on appeal had counsel presented it. In light of this failure, the First DCA's denial of his habeas petition was not an unreasonable application of clearly established Supreme Court law.

As to the second issue raised in Petitioner's state petition (the trial court's alleged error in refusing to permit Petitioner to call witnesses in his defense when defense counsel refused to do), Petitioner failed to show a reasonable probability of success on appeal if appellate counsel had raised the issue. In his state habeas petition, Petitioner did not identify the persons he was not permitted to call as witnesses, nor did he include any allegations as to their proposed trial testimony. In the absence of any showing that the testimony of the uncalled witnesses would have had any effect on the outcome of Petitioner's trial, Petitioner failed to demonstrate to the First DCA that appellate counsel's failure to raise the issue of trial court error was deficient or that he had a reasonable probability of success on appeal if counsel had raised it. Therefore, the First DCA's

denial of his claim of ineffective assistance of appellate counsel was not an unreasonable application of Supreme Court law.

In sum, even if Petitioner's federal petition could be liberally construed as raising freestanding claims of ineffective assistance of appellate counsel, he exhausted only two claims of ineffective assistance of appellate counsel in the state courts (those being the two claims discussed *supra*). As to those two claims, Petitioner failed to satisfy the standard set forth in the AEDPA. Therefore, he is not entitled to federal habeas relief.

## V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 25th day of August 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

      Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).